## JUSTIFIABLE REPUDIATION OF A SETTLEMENT AGREEMENT.

Court of Appeals for Cuyahoga County.

ELIZABETH FARLEY, ADMINISTRATRIX, v. THE CLEVELAND, CIN-CINNATI, CHICAGO & ST. LOUIS RAILWAY COMPANY.

Decided, May 26, 1914.

*Release of Claim for Wrongful Death—Terminated by Failure of Defendant to Carry Out One of its Essential Features.*

1. An agreement to pay a widow a specified sum of money in full settlement of her claim for the wrongful death of her husband, and also to pay her lawyer a stipulated sum under his agreement with her when he took the case or to protect her against the claim of the lawyer, is so far repudiated by a subsequent refusal to settle with the lawyer as to justify the party of the first part in tendering back the amount she had received and declaring the whole agreement at an end.

2. Where one of the parties to an agreement of settlement has repudiated an integral part of it, and the other party has thereupon elected to disavow the whole of it with an offer to restore the *status quo ante*, the rescission is an accomplished fact and requires no judicial declaration of the result thereby accomplished.

*G. B. Keppel* and *Chas. A. Thatcher*, for plaintiff in error.
*Cook, McGowan & Foote*, contra.

GRANT, J.

Error to the court of common pleas.

In 1913 and at the time of his death, one George F. Farley, the plaintiff's intestate, was engaged in the service of the defendant company, and while so engaged was killed.

The plaintiff is his widow as well as the administratrix of his estate. In the latter capacity she brought suit against the defendant for damages occasioned by her husband's death, alleging it to have resulted from the wrongful acts and omissions of the company. For the prosecution and conduct of that action she employed one Thatcher as her agent, engaging to pay him for his service in that behalf 25 per centum of any recovery or settlement reached in the case without going to a trial on the merits.

While that action was pending in court and untried, the plaintiff came to an agreement of settlement with the defendant for the sum of $3,000, and executed a full release, accordingly.

Whereupon, such settlement having been approved by the probate court having jurisdiction, the suit was discontinued by the plaintiff, or at her instance.

The agents of the defendant who effected this settlement knew at the time it was made of the contract between the plaintiff and Thatcher as to the latter's stipulated compensation, and it was a part of their agreement with her, either to pay Thatcher's claim at the rate contracted for, or to "protect" her against it—which of the two things agreed to be done in this respect being in dispute in the record in this case. After the release was signed Thatcher claimed $750 for himself under his agreement with Mrs. Farley. He was entitled to more, his compensation being liquidated at one-fourth of the recovery, and the recovery being $3,000 *and* such sum as might be coming to him in addition.

The defendant refused to pay Thatcher. Mrs. Farley then— as she stood obligated to do—paid him the amount he claimed, to-wit, $750, and so satisfied and kept her promise to him.

Mrs. Farley thereupon treated this repudiation by the defendant of what she regarded as a material part of an indivisible contract, as a rescission of it, *pro tanto,* and elected to rescind it on her own part as an entirety. Accordingly, she tendered back to the defendant company all the money received by her in settlement of her claim, with interest to the day the tender was made, and commenced this action, the tender having been refused.

The petition alleged two causes of action. The first was at law, strictly, being in fact a restatement of the original suit

for damages for the alleged wrongful death of her intestate. The second demanded that the alleged contract of settlement be vacated and set aside, and concluded with a prayer for a money judgment upon the first cause of action.

The defendant, by answer, among other things, pleaded the release.

The plaintiff replied, alleging again in substance the second cause of action of the petition.

Upon the trial in the court below the plaintiff called for the submission to a jury of the issue joined by the pleadings on the second cause of action. This demand was denied, and the court proceeding to a trial of that issue, upheld the release, and dismissed the action.

It is alleged that error has intervened in both of these respects, that is, in refusing a trial of the issue raised by the second cause of action by a jury and in rendering final judgment against the plaintiff.

In support of the first proposition the case of *Perry* v. *O'Neill & Co.*, 78 O. S., 200, is relied on.

Assuming, but not deciding, that the doctrine of that case allows, as of right, a jury trial where the question to be decided is whether on account of the absolute incapacity of a party to make it, a contract is void, *ab initio*, we are of the opinion that no such question is presented in this case. The most that is said in the petition in this respect is that Mrs. Farley, at the time she executed the release, "suffered great mental anguish and grief" and that the defendant knew it.

This allegation falls short of alleging that the settlement contract was void for want of capacity on the part of Mrs. Farley to make it, instead of being voidable at her instance because she, although mentally qualified to make it, was induced to make it by the false and fraudulent conduct and representations of the defendant.

This allegation, without more, does not bring the case within the principle announced in *Perry* v. *O'Neill*, or within the remarks made in the opinion in that case.

It is to be remembered that a pretty stringent rule has recently been announced by the Supreme Court of Ohio in this

respect. In *Palmer* v. *Humiston,* decided February 25, 1913, the syllabus is:

"1. The issues of a case are defined by and confined to the pleadings."

It is quite true that in the later case of *Ryland Coal Co.* v. *McFadden,* decided April 21, 1914, the following syllabus declares the law also on this subject, in the following words:

"2. In such case the issue of contributory negligence is not made by the pleadings, but is raised by the evidence properly offered by the parties in support of their respective claims. The issue of contributory negligence thus raised is to be determined by the same rules as to burden of proof and otherwise as if made by the pleadings."

We are not at present called upon to say which of these two cases, in apparently hopeless conflict, as they appear to be, is the law for us, because neither does the petition sufficiently raise a jury issue, nor is one raised by the testimony disclosed by the record before us, as we think.

We shall spend no time in discussing the question of whether the contract of settlement was induced on the part of Mrs. Farley by the active fraud of the agents of the defendant company, or whether the representations they made to her as part of such inducement were representations which, although false and known by them to be so, were still such representations as she had no right in law to rely upon, and did rely upon them at her own proper peril. Our conclusion rests upon another, and, as we think, more certain and less difficult ground. Nor need we determine whether or not that question presents an issue triable as of right by a jury.

The agents of the defendant company knew, at the time they made settlement with Mrs. Farley, that she had agreed to pay Thatcher at least $750 on the basis of that settlement, and not that she had merely reserved the right to have a lawsuit with Thatcher over his compensation when he should come to the point of demanding it. Just what they agreed to do in regard to Thatcher's claim is not so clear; the testimony on that point

is in dispute. Mrs. Farley says the agreement was to pay Thatcher, unreservedly. The agents say it was to "protect" her against Thatcher.

As these agents had not just fallen from a Christmas tree, but were experienced and seasoned men in that line of activity, it is not likely that they did not at the time have in view the avenue of retreat finally taken by their company in refusing to pay Thatcher, and rely on the requisite degree of darkness that would be shed upon their agreement by the word "protect," as used in relation to Mrs. Farley. In this view of the matter it is prob-able that the testimony of one of the agents is not far afield. His language is:

"Well, I conferred with Mr. Hruska, who was in the adjoining room, and together we told her that we would protect her against Mr. Thatcher and not to accord him the mere privilege of suing her."

What they really meant by agreeing to "protect" her, instead of paying the debt she had obligated herself to pay, is disclosed by their letter to her of April 8th, 1913, which they caused to be read aloud to her "at about 5:30 P. M.," as the endorsement on the communication is at pains to state.

In that letter they tell her plainly that what they mean by "protecting" her is to allow her to be sued by Thatcher, when she should send the summons to them and the company would then do the defending. They further notify her that if she fails to do this, or if she voluntarily pays Thatcher what she thinks she owes him, or in any way assists him to the company's pre-judice, then they will consider themselves relieved from "pro-tecting" her further and will regard their agreement to do so as at an end. This was a matter of ten days after they had gotten the release.

It is of no moment, in our estimation, whether one version or the other of this part of the settlement agreement is accepted, although the brief refers to an answer of one of the agents who affected it as being "illuminating." The answer shows that the agent told Thatcher that they would not pay him $750;

that while that was the proper percentage reserved in the latter's contract with Mrs. Farley, still as he, Thatcher, had not brought about the settlement there was simply no percentage about it; he had earned nothing under his agreement; but that, nevertheless, they were willing to pay him what he reasonably had earned. In other words, having earned nothing they would pay it.

In the view of the matter that the promise was to "protect" Mrs. Farley, instead of to pay what she owed Thatcher, even so, the kind of "protection" to which, upon every just consideration, she was entitled, was that due to an honest and honorable woman, although an Irish woman, namely, not to back her in an attempt to break faith and repudiate an obligation and to be put in the attitude of one who is to be sued before she will pay what she owns is an honest debt. To defend her in such a lawsuit, in which she goes on an enduring and public record as one who will not keep her written engagement, is no adequate "protection" to a woman, who having a higher sense of honor than that, paid the debt out of her own pocket and thus received a less sum than she had been promised, to meet the loss occasioned by her husband's killing. In the view we take of the matter it was no "protection" at all.

It may be that Mrs. Farley's idea that she ought to be protected in keeping her agreement with Thatcher instead of breaking it, was rather primitive; but such as it was, it was hers. She was entitled to have it, and it is not believable that she would have settled if she had not thought it was the idea of the company also. The record shows her to be that kind of a woman, and she and not the company was doing the obliging when she agreed to settle her lawsuit. If it shall be said that by going back from her settlement she showed herself willing to break contracts, too, the answer must be the example she had just had in that line, from men who told her that they were her real friends and her only disinterested advisers.

The defendant company broke its agreement in this respect. Mrs. Farley, because she would not break *her* agreement—and no amount of typical "protection" could either in law or morals

compel her to do so—did not receive in settlement the amount the company bargained to pay her, and the vice of the defendant's initial repudiation of its contract penetrated the entire transaction, and entitled Mrs. Farley to treat it as at an end, at her own election. She did so elect and offered to restore to the defendant all she had taken from it.

It does not affect this conclusion to say that as the two parts of the contract have regard to two separate things, one to paying Mrs. Farley for her loss, and the other to paying a debt which the defendant assumed to pay in her stead, therefore the company may keep that part of the agreement which is of advantage to itself and may violate the part which it deems burdensome, and send the other party forth to revel in the luxury of a lawsuit, or, in legal parlance, remit him to his remedy at law. It would be most inequitable to allow this. The two parties are not equals in this respect. To the defendant, lawsuits are easy things, old and familiar acquaintances. To a poor Irish woman they are a burdensome thing. And to compel her to indulge in one, when her sole desire is to keep her own engagements and to expect others to keep theirs, which if done would obviate lawsuits, must be regarded as an unjust thing. Speaking for myself, it would be with extreme reluctance that a view of the law would be entertained which could permit a party to a contract to retain its benefits and reject its burdens, with no alternative right except to engage in all the uncertainties, vexations and expenses of the litigation to which the other party should be remitted. The defendant company could have easily held its settlement contract by keeping its part of it, and at a relatively small expense; for it is not seriously contended now that Thatcher's claim was unreasonable in amount. The responsibility, therefore, is on the company and not on Mrs. Farley. In receding from her part of the agreement she was only entering on a path to which she was invited by her adversary, who had opened the way for her. If this case goes to a jury it will be because the defendant company sent it there.

When the defendant repudiated its contract to "protect" her, within the intendment of that word as we find it, it was Mrs.

Farley's right to declare the agreement as a totality at an end, to tender back the money received by her on account of it, and stand where she stood before it was made. She might then sue in damages as for a breach of it, or be remitted to her original cause of action, which would then remain wholly unadjudicated and unaffected by a settlement which had failed through no fault of hers, but through the sole fault of the other party to it.

Mrs. Farley has elected, seasonably, to take the latter alternative.

When, because the defendant had repudiated an integral part of the settlement agreement, the plaintiff chose to end the whole of it and offered to put the other party in *statu quo ante,* the rescission of it was a fact accomplished—accomplished by the parties themselves, as their right was—and no duty remained to the court in that respect, but upon the prayer of the plaintiff to make a judicial finding and declaration of the already rightfully accomplished result. The prayer of the petition is broad enough to allow this to be done.

Our conclusion is that the trial court should have done this and sent the case, thus stripped of its impotent settlement agreement, to a jury for determination upon the first cause of action in the petition.

Because this was not done, the judgment complained of is reversed and the cause is remanded to the court of common pleas for further proceedings, in accordance with law.

Having made this disposition of the petition in error, the appeal in the same case is dismissed.

WINCH, J., and MEALS, J., concur.